899 F.2d 940
 Jerry Wayne SMITH, Plaintiff-Appellant,
v.
Herb MASCHNER, Director, Dale Bohannon, Deputy Director,
Randall Buford, Deputy Director, Kenny Lynch, Major of
Security, Lieutenant Dan Pettis, Sergeant Douglas Soper,
Sergeant Mike Ralls, Sr., Victor Gill, Co. II, Daniel Young,
Sergeant Pat Bradley, Jean Mowry, Mailroom Supervisor, and
Sergeant Williamson, Defendants-Appellees,
and
Sergeant William Rice and Marilyn Belshe, Hospital
Administrator, Defendants.
 No. 88-2687.
 United States Court of Appeals,
Tenth Circuit.
 March 29, 1990.
 
 Jerry Wayne Smith, pro se.
 Robert T. Stephan, Atty. Gen. and Carol R. Bonebrake, Asst. Atty. Gen., State of Kan., Topeka, Kan., for defendants-appellees.
 Before LOGAN, SEYMOUR and BALDOCK, Circuit Judges.
 SEYMOUR, Circuit Judge.
 
 
 1
 Plaintiff Jerry Wayne Smith filed suit alleging defendants violated numerous of his constitutional rights, including deprivation of his property without due process of law, interference with his mail, denial of procedural due process during the course of his disciplinary hearings, and conspiring to deny him access to the courts. As part of the conspiracy claim, Smith alleged defendants placed him in disciplinary segregation in retaliation for his ongoing litigation against prison officials and his "jailhouse lawyering." Smith's amended complaint raised these allegations pursuant to 42 U.S.C. Secs. 1983, 1985, and 1986 (1982). The district court entered summary judgment against Smith on these claims, and denied his motion for partial summary judgment. Smith appeals from both these judgments. We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.[1]
 
 I.
 
 2
 We review de novo the district court's grant of summary judgment:
 
 
 3
 "In reviewing a summary judgment order, the appellate court applies the same standard employed by the trial court under Rule 56(c) of the Federal Rules of Civil Procedure. When a motion for summary judgment is granted, it is the appellate court's duty to examine the record to determine if any genuine issue of material fact was in dispute; if not, the court must decide if the substantive law was correctly applied."
 
 
 4
 Osgood v. State Farm Mut. Auto. Ins. Co., 848 F.2d 141, 143 (10th Cir.1988) (citation omitted). Viewing the evidence in the light most favorable to the party opposing the motion, we must determine " 'whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.' " Smith Machinery Co. v. Hesston Corp., 878 F.2d 1290, 1294 (10th Cir.1989) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Accord Missouri Pac. R.R. v. Kansas Gas & Elec. Co., 862 F.2d 796, 798 (10th Cir.1988). If so, summary judgment in favor of the defendant is unwarranted. Bearing in mind this standard of review, we address plaintiff's claims seriatim.
 
 
 5
 A. Deprivation of Property Without Due Process
 
 
 6
 Smith complains that on occasion several defendants deprived him of his property without due process of law. He alleges that prison officials (1) donated several of his Christmas presents to charity without his permission; (2) lost or destroyed law books, jewelry, federal transcripts, and legal files and briefs belonging to him; (3) deducted money from his prison trust account for postage to pay for returning to sender materials that the prison had authorized him to receive; (4) returned several items to sender without prior notice to him, including a "battery-operated religious pen," and denied his request to receive similar items while incarcerated; (5) failed to attach extra postage to his letters to his fiancee, even though Smith had paid for extra postage, forcing his fiancee to pay postage due; and (6) confiscated from his mail his son's birth certificate, insurance papers, and an identification card, as well as financial information and vendor order forms.
 
 
 7
 The district court held that Smith had an adequate state post-deprivation remedy for the loss of this property, and therefore had not stated a claim for the denial of his Fourteenth Amendment right to due process. See Hudson v. Palmer, 468 U.S. 517, 533, 104 S.Ct. 3194, 3203, 82 L.Ed.2d 393 (1984); Parratt v. Taylor, 451 U.S. 527, 543-44, 101 S.Ct. 1908, 1916-17, 68 L.Ed.2d 420 (1981). We agree.
 
 
 8
 Smith had sought and recovered damages in a prior state court action on claims that prison officials deprived him of jewelry, twenty-six law books, one Christmas present, his federal transcripts, and several legal files and briefs. The availability of such a state post-deprivation remedy undercuts Smith's argument that defendants deprived him of this property without due process. See id. Accordingly, the district court did not err in granting summary judgment on these claims.
 
 
 9
 An adequate state remedy is also available for the other property deprivations Smith alleges. Smith argues on appeal that defendants should not be permitted to claim that he has an adequate post-deprivation remedy under state law because he filed suit in state court and opposed defendants' petition for removal to federal court. Smith did not seek a remedy under state law in his state court action, however. Rather, he sought a remedy for alleged federal constitutional violations under 42 U.S.C. Secs. 1983, 1985, and 1986. We are not persuaded by Smith's argument that the district court erred in directing him to state court given that he chose not to seek a state law remedy in his prior action in state court.
 
 B. Interference With Prisoner Mail
 
 10
 Smith contended below that defendants interfered with his mail by inspecting his correspondence and by returning it to the sender without his permission. Specifically, Smith alleged that prison officials (1) returned to sender letters mailed or forwarded to him by friends, including several chain letters; (2) opened and inspected legal mail, contrary to the prison's own regulations, including mail from the post office and the Internal Revenue Service; (3) returned catalogues mailed to plaintiff; (4) failed to return to him receipts for certified mail; and (5) had an ongoing policy of placing items discovered in a prisoner's mail in his inmate file for use by the parole board.
 
 
 11
 The Supreme Court considered the issue of prisoner mail in Thornburgh v. Abbott, --- U.S. ----, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989), a case involving prisoners' challenge to Federal Bureau of Prisons regulations authorizing the censorship of incoming magazines. The Court acknowledged that prison officials were better equipped than the judiciary to deal with the security implications of interactions between prisoners and the outside world, and emphasized that broad deference should be accorded their efforts. Id. 109 S.Ct. at 1878. Noting that security concerns about incoming material are of greater magnitude, id. at 1881, the Court held that "regulations affecting the sending of a 'publication' ... are 'valid if [they are] reasonably related to legitimate penological interests.' " Id. (quoting Turner v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987)). Under this standard, the Court concluded that the regulations in Thornburgh permitting censorship of the content of incoming magazines were valid. Id. 109 S.Ct. at 1882-84.
 
 
 12
 The prison officials' actions here infringed on Smith's interest in receiving materials from the outside world to a much lesser degree than those permissible under the regulations in Thornburgh. Smith submitted exhibits to the district court showing that defendants returned to sender incoming mail consisting of chain mail or correspondence containing labels or stickers. Defendants contended, without serious dispute by Smith, that receipt of chain mail or labels and stickers by prisoners violates content-neutral prison regulations. Smith provided no grounds for believing these regulations are anything other than a valid response to legitimate security concerns. Significantly, he pointed to nothing in the record suggesting that personal correspondence sent without the offending stickers or labels was not forwarded to him. We conclude Smith failed to demonstrate that the prison's regulation of his incoming personal correspondence violated any protected right. The district court did not err in granting summary judgment on this claim.
 
 
 13
 As for Smith's claim concerning his mail from the post office and the IRS, he alleged only that prison officials opened and inspected it. Smith does not assert that inspection interfered with his communication with counsel or the courts. See LeVier v. Woodson, 443 F.2d 360, 361 (10th Cir.1971) (regulation of prison mail flow generally better left to prison officials' discretion, with exception of correspondence to appropriate persons about prison conditions and legality of conviction); cf. Evans v. Moseley, 455 F.2d 1084, 1087 (10th Cir.) (prisoner's right to correspond with attorney does not extend to correspondence "on any subject," but only to issues implicating access to courts), cert. denied, 409 U.S. 889, 93 S.Ct. 160, 34 L.Ed.2d 146 (1972). Defendants admitted to opening one piece of Smith's constitutionally protected legal mail by accident. Such an isolated incident, without any evidence of improper motive or resulting interference with Smith's right to counsel or to access to the courts, does not give rise to a constitutional violation.
 
 
 14
 Similarly, Smith's complaint about undelivered catalogues fails to raise an issue of constitutional magnitude. Cf. Mower v. Swyhart, 545 F.2d 103, 104 (10th Cir.1976) (maximum security prison may require prior authorization for prisoners to receive college catalogues). His complaint concerning unreturned certified mail receipts is also without merit. Plaintiff admitted that the addressees did receive their mail. His complaint is solely that he did not receive receipts for the mail.
 
 
 15
 Finally, Smith failed to provide evidence of any prison policy of confiscating materials from the mail for punitive purposes, other than his unsworn statement. He offered no details concerning what material was confiscated, or the circumstances in which the prison had interfered with mail in this manner. Rather, he produced a letter indicating the prison had once confiscated unspecified mail in another inmate's case, and had forwarded the material to the parole board. He did not produce sufficient evidence on his allegation of a prison policy to withstand defendants' motion for summary judgment.
 
 
 16
 C. Disciplinary Proceedings And Access To The Courts
 
 
 17
 Smith's claims that prison officials denied him procedural due process in disciplinary proceedings and denied him his right of access to the courts are intertwined. He asserted that he did not receive a fair disciplinary hearing on any of the charges against him, and that disciplinary proceedings were initiated against him in retaliation for his prior lawsuits against prison officials. He also complained of other instances of prison officials harassing him in retaliation for his litigation against the prison.
 
 
 18
 The record before the district court reflects the following undisputed facts for purposes of the parties' cross motions for summary judgment. Officials searched Smith's briefcase before he left his cell for a trip to state court for a hearing. Smith then walked in shackles to the bus taking him to court, at which point officials ordered him to submit to another search of his briefcase. According to Smith, he had never before been required to submit to a second search under these circumstances. Smith disobeyed two orders to open his briefcase, and officers then told him he would have to leave his briefcase at the prison if he did not submit to the search. Once in court, Smith informed the judge that he could not proceed without the papers in his briefcase. The judge ordered prison officials to retrieve the case from the prison. When the briefcase arrived, it was opened in court and the hearing proceeded.
 
 
 19
 Officials placed Smith in "segregation" immediately upon his arrival back at the prison. That same day, they informed him of the disciplinary charges against him, including two charges of disobeying an order, one charge of disrespect, and one charge of possession of unregistered personal property.[2] He was also charged later with violating prison mail regulations and with misuse of state property.
 
 
 20
 In addition to an initial hearing the day following his segregation, plaintiff received a separate hearing later on each charge before a disciplinary board consisting of three prison officials. The board found him guilty on all charges, and sentenced him to seven months in segregation and the loss of from eleven months and fifteen days to thirteen months of institution good time credits.[3] A portion of his segregation sentence was later suspended.
 
 
 21
 Smith challenged the fairness of the procedure at the disciplinary hearings, contending that prison officials gave him notice of the charges only after he was placed in segregation; failed to make findings of fact supporting each guilty verdict; and denied his requests to call certain witnesses, be represented by a fellow inmate, and confront his accusers. In addition, Smith alleged that witnesses lied at the hearings, and that the disciplinary proceedings constituted retaliation against him for successfully suing prison officials, both on his own behalf and on behalf of other inmates. Finally, although Smith questioned the neutrality of some of the hearing officers at the time of his disciplinary hearings, board chairman Major Kenneth Lynch refused to recuse himself. Smith contended in district court that Major Lynch's refusal to step down denied him his right to an impartial factfinder.
 
 
 22
 The district court held that Smith's hearings complied with the due process requirements for prison disciplinary hearings in Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Under these standards, a prisoner punished by loss of good time credits must receive (1) "written notice of the charges" against him at least twenty-four hours before the hearing; (2) the opportunity "to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals"; and (3) a " 'written statement of the factfinders as to the evidence relied on and the reasons' for the disciplinary action" taken. Id. at 563-66, 94 S.Ct. at 2978-80 (citations omitted). The district court concluded that because Smith had received a procedurally fair disciplinary hearing on each charge, it could not look behind the evidence and substitute its judgment for that of prison officials. After reviewing the record, the court found no evidence that defendants conspired to retaliate against Smith by disciplining him, and therefore granted summary judgment on this claim.
 
 
 23
 We agree with the district court that Smith received constitutionally adequate notice of the charges, as he was told of them within hours of being placed in segregation and the day before the first hearing. See id. at 564, 94 S.Ct. at 2978. Defendants also gave Smith a reasonable opportunity to respond to the charges against him at the hearings. Smith was not constitutionally entitled to counsel, and certainly not to counsel of his choice, at his disciplinary hearing. Id. at 570, 94 S.Ct. at 2981. Finally, although the board did not provide a written statement of the evidence supporting the disciplinary action, Smith received a written transcript containing the required information. Providing a written transcript more than suffices to insure adequate review of the proceedings, to protect the inmate against collateral consequences, and to guarantee that officials, faced with outside scrutiny, will act fairly. See id. at 565, 94 S.Ct. at 2979; cf. Ruiz v. Estelle, 679 F.2d 1115, 1155 (5th Cir.1982) (suggesting that tape recording disciplinary hearing exceeds Wolff 's requirement of written findings), modified in part and vacated in part on other grounds, 688 F.2d 266 (5th Cir.1982), cert. denied, 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983). A transcript of the disciplinary proceedings was therefore an adequate substitute for written findings.
 
 
 24
 Smith's argument that the disciplinary board did not permit him to call witnesses in his defense raises more serious concerns. Smith submitted evidence that the hearing chairman, Major Lynch, denied his requests to call two witnesses. Smith made the requests at the hearing on the disrespect charge. At that hearing, Mr. Pettis accused Smith of showing disrespect towards Mr. Bohannon and, in defense, Smith sought to call Mr. Bohannon, the deputy director of the prison, and Mr. Lynch, the director of security. Mr. Bohannon had a time conflict and Mr. Lynch declined to testify because he was chairman of the disciplinary board. Mr. Lynch denied any knowledge of events.
 
 
 25
 Under Wolff, prisoners are entitled to marshal their defenses by calling witnesses. Wolff, 418 U.S. at 566, 94 S.Ct. at 2979. The scope of this right, however, is limited by the special requirements of the prison setting. "Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence." Id. at 566, 94 S.Ct. at 2979. The scope of a prisoner's right to confront and cross-examine witnesses is similarly committed to the sound discretion of prison officials. Id. at 569, 94 S.Ct. at 2981.
 
 
 26
 Clearly, Smith was not entitled to call every available witness in his defense. There is some indication in the disciplinary hearing record that Mr. Lynch may have had some knowledge of the events in question, but we conclude that the chairman's refusal to take the stand himself was a proper exercise of his discretion. The decision to deny Smith's request to question Mr. Bohannon, however, is another matter. Smith alleged at the hearing that Mr. Pettis was not giving an accurate account of events. Mr. Bohannon apparently was the only other participant in this situation besides Smith and Mr. Pettis. By denying Smith the opportunity to call Mr. Bohannon, therefore, defendants effectively denied him any defense other than his own testimony about the events. Looking at this evidence in the light most favorable to Smith, we conclude that Smith produced sufficient evidence to withstand defendants' motion for summary judgment on his claim that the denial of his request to call Mr. Bohannon deprived him of procedural due process at the disciplinary hearing.
 
 
 27
 Finally, Smith's presentation of evidence that defendants' motive in disciplining him was retaliation for prior lawsuits, and that the factfinders at his hearing had a hidden motive in finding him guilty, if believed, call into doubt whether Smith was given a meaningful opportunity to be heard. "The fundamental requirement of due process is 'the opportunity to be heard.' It is an opportunity which must be granted at a meaningful time and in a meaningful manner." Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965) (citation omitted). When a prisoner asserts a valid challenge to the factfinders' neutrality, therefore, judicial review of disciplinary decisions must include an inquiry into whether discipline was imposed for an improper purpose. See Wolff, 418 U.S. at 571, 94 S.Ct. at 2982 (existence of "a hazard of arbitrary decision making" may violate due process); see also Marchesani v. McCune, 531 F.2d 459, 462 (10th Cir.) (clear showing of abusive or capricious action in classifying prisoner as a "special offender" may violate due process), cert. denied, 429 U.S. 846, 97 S.Ct. 127, 50 L.Ed.2d 117 (1976); Graham v. Willingham, 384 F.2d 367, 368 (10th Cir.1967) (prison discipline or segregation imposed in an arbitrary or capricious manner may support civil rights violation).
 
 
 28
 The existence of an improper motive for disciplining a prisoner which results in interference with a constitutional right also may give rise to a second and separate cause of action under section 1983. Here, Smith alleged that defendants conspired to deprive him and did deprive him of his right of access to the courts. "The right of access to the courts is basic to our system of government, and it is well established today that it is one of the fundamental rights protected by the Constitution." Nordgren v. Milliken, 762 F.2d 851, 853 (10th Cir.) (quoting Ryland v. Shapiro, 708 F.2d 967, 971 (5th Cir.1983)), cert. denied, 474 U.S. 1032, 106 S.Ct. 593, 88 L.Ed.2d 573 (1985). This right is one of the privileges and immunities accorded citizens under article 4 of the Constitution and the Fourteenth Amendment. Id. It is also one aspect of the First Amendment right to petition the government for redress of grievances. Id. Finally, the right of access is founded on the due process clause and guarantees the right to present to a court of law allegations concerning the violation of constitutional rights. Id.
 
 
 29
 Prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts. "It is well established that prison officials may not unreasonably hamper inmates in gaining access to the courts." Evans, 455 F.2d at 1087; see, e.g., Wildberger v. Bracknell, 869 F.2d 1467, 1468 (11th Cir.1989) (retaliation for filing lawsuits and administrative grievances "violates both the inmate's right of access to the courts and the inmate's First Amendment rights") (citation omitted)); Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir.1989) (allegation that prison officials conspired to label prisoner a "snitch" in retaliation for petitioning prison and government for redress of grievances stated cognizable claim for violation of right of access to the courts); Harris v. Fleming, 839 F.2d 1232, 1236-38 (7th Cir.1988) (allegations of retaliation, combined with evidence of termination from prison employment and cell transfers following successful lawsuits, held sufficient to create jury question in section 1983 action); Gibbs v. King, 779 F.2d 1040, 1046 (5th Cir.) ("The law is well established that prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts." (citation omitted)), cert. denied, 476 U.S. 1117, 106 S.Ct. 1975, 90 L.Ed.2d 659 (1986); Milhouse v. Carlson, 652 F.2d 371, 373-74 (3d Cir.1981) (allegations viewed as a whole supported conspiracy to discipline prisoner for initiating civil rights suit against officials, contrary to First Amendment right of access to court); McDonald v. Hall, 610 F.2d 16, 18 (1st Cir.1979) (allegations supporting existence of circumstantial evidence of retaliation for court action sufficient to withstand motion to dismiss section 1983 action); see also Johnson-El v. Schoemehl, 878 F.2d 1043 (8th Cir.1989); Jackson v. Cain, 864 F.2d 1235, 1248-49 (5th Cir.1989); Cale v. Johnson, 861 F.2d 943, 950-51 (6th Cir.1988).
 
 
 30
 This principle applies even where the action taken in retaliation would be otherwise permissible. "[I]t is well established that an act in retaliation for the exercise of a constitutionally protected right is actionable under [42 U.S.C.] Section 1983 even if the act, when taken for a different reason, would have been proper." Buise v. Hudkins, 584 F.2d 223, 229 (7th Cir.1978), cert. denied, 440 U.S. 916, 99 S.Ct. 1234, 59 L.Ed.2d 466 (1979); see, e.g., Franco v. Kelly, 854 F.2d 584, 590 (2d Cir.1988); Howland v. Kilquist, 833 F.2d 639, 644 (7th Cir.1987); Adams v. James, 784 F.2d 1077, 1080 (11th Cir.1986); see also Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 283, 97 S.Ct. 568, 574, 50 L.Ed.2d 471 (1977) (even though government employee "could have been discharged for no reason whatever," allegation that decision not to rehire was in retaliation for protected speech stated constitutional claim); Owens v. Rush, 654 F.2d 1370, 1379 (10th Cir.1981) (retaliation against husband for helping wife in Title VII case unconstitutional, regardless of whether husband had independently protected liberty interest).
 
 
 31
 Smith's appearance in court, a protected activity, and the prison's disciplinary action, taken immediately upon his return from court, were indisputably in close temporal proximity. Smith presented evidence[4] that prison officials had never before questioned him about his briefcase, the primary subject of his disciplinary proceedings.[5] In spite of his prior good record, Smith was punished with a sizeable loss of good time credits. In addition, Smith presented an affidavit by fellow inmate Thomas Chappell that asserted officials intentionally segregated and then transferred Chappell to prevent his being a witness in a pending lawsuit by Smith. Smith alleged this type of interference occurred on other occasions as well, and that officials denied him his law files, papers, and books while he himself was in segregation. Smith submitted an affidavit by Craig Bryant, a prison law clerk, that prison officials removed Mr. Bryant from library employment in retaliation for assisting Smith while he was in segregation.
 
 
 32
 Defendants denied that any disciplinary actions were taken in retaliation for Smith's successful litigation, or to deter future lawsuits. They similarly denied hindering Smith's access to the courts by any other means. Although defendants did not dispute transferring the prisoners named by Smith, they denied any improper motive. Defendants responded that if they deprived Smith of legal files or materials while he was in or out of segregation, their actions were unknowing and unintentional.[6] Defendants contended that they took no action with the intent of denying Smith access to the courts.
 
 
 33
 The circumstantial evidence in this case leads us to conclude that a jury could reasonably find that defendants retaliated against Smith for the exercise of his right of access to the courts. When a defendant moves for summary judgment, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Anderson, 477 U.S. at 252, 106 S.Ct. at 2512. Where defendants' motives are seriously at issue, trial by affidavit is particularly inappropriate. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255, 106 S.Ct. at 2513 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970)).
 
 
 34
 We think Smith's evidence is sufficient to support an inference by a fair-minded jury that defendants took disciplinary action against him based at least in part on improper motives. Smith has supported his allegations of retaliation by the only means available to him--circumstantial evidence of the suspicious timing of his discipline, coincidental transfers of his witnesses and assistants, and an alleged pattern by defendants of blocking his access to legal materials and assistance.
 
 
 35
 Precisely because the ultimate fact of retaliation turns on defendants' state of mind, it is particularly difficult to establish by direct evidence. For example, in McDonald, 610 F.2d at 18, the plaintiff alleged only that his prison transfer had chronologically followed his court action. The First Circuit considered this fact, if proven, to be some circumstantial evidence of retaliation.
 
 
 36
 "While it may be possible in some cases to support such an ultimate fact with clear evidence which can be averred in the complaint, see Buise v. Hudkins, 584 F.2d 223 (7th Cir.1978) (direct written evidence of intent), we cannot presume this will often be the case, see Garland v. Polley, 594 F.2d 1220 (8th Cir.1979). Moreover [plaintiff] in his complaint did aver a chronology of events which may be read as providing some support for an inference of retaliation."
 
 
 37
 Id.
 
 
 38
 Similarly, in Harris, 839 F.2d at 1236-38, the plaintiff produced only circumstantial evidence of retaliation. The plaintiff brought a section 1983 action, submitting evidence that prison officials had fired him from two prison jobs after his partial success in a prior lawsuit against the assistant warden, and that he was fired from a third job and transferred to a new cell after he declined to settle the same lawsuit. The district court granted summary judgment for the defendants. The Seventh Circuit reversed, explaining that the pattern and timing of firings and cell transfers were sufficient to make the existence of a retaliatory motive a jury question. Id. at 1237-38; see also Milhouse, 652 F.2d at 374 (prisoner's allegations should be viewed as a unit, rather than as isolated incidents; so viewed, they indicate a series of actions designed to punish prisoner for seeking access to the courts).
 
 
 39
 In holding that a reasonable jury could find that Smith has supported his allegations of retaliation, we are not suggesting that a reasonable jury should find for him. Rather, we conclude only that on the evidence before us, summary judgment was improper on Smith's retaliation claim. On remand, Smith must still prove that the actual motivating factor behind defendants' actions was retaliation for his prior or current litigation. McDonald, 610 F.2d at 18. He must prove that "but for" the retaliatory motive, the incidents to which he refers, including the disciplinary action, would not have taken place. Id. (citing Mt. Healthy City School Dist. Bd. of Ed. v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).
 
 
 40
 In addition to complaining that prison officials retaliated against him for his own successful lawsuits, Smith alleged that defendants retaliated in response to his "jailhouse lawyering" on behalf of other inmates. Smith does not have a protected interest in providing legal representation to other inmates. See Ervin v. Ciccone, 557 F.2d 1260, 1262 (8th Cir.1977). Whether he may assert his fellow inmates' right of access to the courts is a separate issue, and there is some controversy in the circuits on whether a prisoner has standing to assert such claims. Compare McDonald, 610 F.2d at 19, and Buise, 584 F.2d at 227 and Rhodes v. Robinson, 612 F.2d 766, 769 (3d Cir.1979) (prison writ writers have standing to assert other prisoners' right of access to the courts, citing Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969)) with Adams, 784 F.2d at 1080-81 (prison writ writer has standing to assert other prisoners' right of access to the courts in a class action, but has no standing in individual cases even if prison officials fail to show other prisoners have access without writ writer's assistance) and Gometz v. Henman, 807 F.2d 113, 115 (7th Cir.1986) (reaching the merits, but with "some unease" about the plaintiff's standing to assert the claim on behalf of another prisoner).
 
 
 41
 Smith, however, has not claimed that other inmates were deprived of access to the courts, or unduly hindered in the pursuit of their own legal remedies. Rather, Smith argues only that his fellow inmates were deprived of his assistance. Prison inmates do not possess the right to a particular prisoner's help in preparing their legal materials, so long as prison officials make other assistance available. See Ramos v. Lamm, 639 F.2d 559, 583 (10th Cir.1980) (inmates have no right to particular type of legal assistance), cert. denied, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981); cf. Johnson v. Avery, 393 U.S. at 490, 89 S.Ct. at 751 (prison may prohibit inmates from giving legal assistance if reasonable alternative available). Thus, even assuming Smith would have standing to assert his fellow prisoners' constitutional claims, there are no claims to assert.
 
 
 42
 Our conclusion that Smith cannot assert the "right" of other inmates to his legal representation does not mean that his allegation of defendants' retaliation against him for prevailing in a class action to change the prisoners' conditions of confinement fails to state a constitutional claim. Such litigation is distinguishable from legal action pursued solely for the benefit of a single inmate.
 
 
 43
 "Litigation undertaken in good faith by a prisoner motivated to bring about social change and protect constitutional rights in the prison is a 'form of political expression' and 'political association' much as the Supreme Court has held litigation to be for certain organizations outside the prison setting. A properly stated first amendment claim by an inmate does not fail simply because the allegedly protected activities were conducted on behalf of others. The right of free expression is cherished for its force as an agent of social change and not only as a right of self-interested individuals."
 
 
 44
 Adams, 784 F.2d at 1081 (citations omitted). Smith's assertion that defendants denied him his right to use litigation to effect change in the prison by retaliating against him thus states a claim under section 1983 similar to his claim that defendants retaliated against him for pursuing his own personal litigation.
 
 
 45
 Finally, Smith alleged that defendants Maschner, Bohannon, Buford, and Lynch encouraged the alleged retaliatory incidents by failing to train prison employees properly or by failing to intervene. We agree with the district court that in these claims, Smith has alleged liability solely under a theory of respondeat superior, which will not support section 1983 liability. See Kaiser v. Lief, 874 F.2d 732, 736 (10th Cir.1989). Defendants may still be liable for their personal participation, if any, in these incidents.
 
 II.
 
 46
 We conclude that Smith produced sufficient evidence on his retaliation claims and on his procedural due process claim relating to the disciplinary hearing to withstand defendants' motion for summary judgment. However, he faces other obstacles in pursuing a federal remedy.
 
 
 47
 Insofar as Smith seeks restoration of his good time credits, his complaint runs afoul of the Supreme Court's holding in Preiser v. Rodriguez, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). The Court in Preiser construed state prisoners' challenges to the disallowance of good time credits as a challenge to the duration of their imprisonment, and held that the writ of habeas corpus was the appropriate remedy for such claims. Id. at 487-90, 93 S.Ct. at 1835-37. Smith also seeks the restoration of good time credits. His remedy, like the remedy of the plaintiffs in Preiser, is a writ of habeas corpus under 28 U.S.C. Sec. 2254(d) rather than a complaint under sections 1983, 1985, and 1986.
 
 
 48
 The district court could liberally construe Smith's complaint as a section 2254 petition, cf. Haines v. Kerner, 404 U.S. 519, 520-21, 92 S.Ct. 594, 595-96, 30 L.Ed.2d 652 (1972) (pro se complaints held to less stringent standards), but section 2254 requires plaintiff to exhaust his state remedies prior to seeking habeas relief in federal court. Because the record does not make clear whether Smith has adequately pursued the remedy of new disciplinary hearings or restoration of his good time credits in state court, we leave to the district court on remand to determine whether Smith may immediately pursue relief under section 2254.
 
 
 49
 Of course, to the extent Smith seeks money damages as well as restoration of good time credits, his action is governed by section 1983. As the Supreme Court noted in Wolff, 418 U.S. at 554, 94 S.Ct. at 2973, "Preiser expressly contemplated that claims properly brought under Sec. 1983 could go forward while actual restoration of good-time credits is sought in state proceedings."
 
 
 50
 The judgment of the United States District Court for the District of Kansas is AFFIRMED in part and REVERSED in part, and the cause is REMANDED for further proceedings in accordance with this opinion. The mandate shall issue forthwith.
 
 
 
 [1]
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument
 
 
 [2]
 In a prior state court action, Smith apparently succeeded on a claim that the disciplinary proceeding in which he was found guilty of possession of unregistered personal property was unconstitutional. The district court below nevertheless reviewed the fairness of all of the proceedings. The current status of this charge is not clear from the record on appeal, but the fairness of the disciplinary proceeding remains relevant to this case insofar as Smith has relied on this event to substantiate his claim that prison officials acted in retaliation rather than in pursuit of any legitimate penological purpose
 
 
 [3]
 Smith alleged in his amended complaint, filed April 19, 1985, that he lost thirteen months of institution good time credits. The records from the disciplinary proceedings indicate that plaintiff was sentenced to a loss of eleven months and fifteen days. We need not resolve this possible discrepancy on appeal
 
 
 [4]
 The Court in Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57, 106 S.Ct. 2505, 2514-15, 91 L.Ed.2d 202 (1986), held that a plaintiff must produce evidence of improper motive, rather than relying upon allegations, to defeat a summary judgment motion
 
 
 [5]
 Significantly, one guard in his written report on Smith's possession of unregistered personal property stated that "on the way back [from court] we unfortunately were forced to put him [plaintiff] in the A & T Unit because of his way of acting down there at court." See Transcript of Disciplinary Hearing in Case No. 1872. According to the charges themselves, however, the incidents occurred before Smith left for court and upon his return
 
 
 [6]
 The state court determined that several law books and files had been destroyed by defendants, apparently during the time that Smith was in segregation. Whether these materials are the same as those referred to here is not clear from the record on appeal. In any event, the state court proceedings apparently addressed only the destruction of legal materials as a deprivation of property, not as evidence of retaliation