983 F.2d 1077
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Joe Clarence SMITH, Jr., Plaintiff-Appellant,
v.
Samuel SUBLETT, Deputy Warden, Ellis McDougal, Director,
Lester Jennings, ADOC, Captain Coonts, Lieutenant Vallier,
as Shift Lieutenant of Cell Block 6, CSO II Ontiveros, as
Disciplinary Coordinator of Cell Block 6 Search Team; CSO
Dowling, as a member of Cell Block 6 Search Team; Carol
Scott, CPO I, as a Counselor assigned to wing 3, Cell Block
6, Defendants-Appellees.
 No. 91-16506.
 United States Court of Appeals, Ninth Circuit.
 Submitted Dec. 17, 1992.*
Decided Jan. 14, 1993.
 
 Before GOODWIN, O'SCANNLAIN and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Joe Clarence Smith, an Arizona death row inmate, appeals pro se the grant of summary judgment in favor of prison officials in his 42 U.S.C. § 1983 action. We reverse the district court with respect to Smith's claim of retaliatory searches and seizures and affirm on all other issues.
 
 
 3
 * Smith is currently in the custody of the Arizona Department of Corrections. On March 27, 1990, he filed a Section 1983 claim against several prison officials (collectively "defendants") alleging a conspiracy by defendants to deprive him of his constitutional rights. Specifically, Smith maintains that defendants engaged in harassing searches, confiscated his personal property, denied him visitation rights, transferred to a different cell, and subjected him to improper disciplinary proceedings in retaliation for his having filed grievances against them and for his having assisted the American Civil Liberties Union in a pending action against them. On June 12, 1991, the district court awarded defendants summary judgment on the ground that Smith had failed to make a proper showing of retaliatory motive.
 
 
 4
 Smith also filed a motion for a temporary restraining order or a preliminary injunction asking the court to prohibit the defendants from destroying his legal materials. On August 16, 1990, the court denied the motion, but ordered the defendants not to destroy Smith's legal materials.
 
 II
 
 5
 Smith's right to petition the government for redress of grievances is protected by the First Amendment. Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir.1989). And, "[d]eliberate retaliation by state actors against an individual's exercise of this right is actionable under section 1983." Id; Thomas v. Carpenter, 881 F.2d 828, 829 (9th Cir.1989), cert. denied, 494 U.S. 1028 (1990).
 
 
 6
 To make out a prima facie claim of retaliation, Smith has the burden of showing that retaliation for the exercise of protected conduct was the "substantial" or "motivating" factor behind the conduct of defendants. Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977). After such a showing, the burden then shifts to defendants to demonstrate that they would have engaged in the same conduct even if Smith had not had a history of filing grievances against them. Id.; Soranno's Gasco, Inc., 874 F.2d at 1314-15.
 
 
 7
 Each allegation of impermissible conduct by defendants is discussed in turn to determine whether any of Smith's claims states a triable question of fact.
 
 A. Cell and Body Searches
 
 8
 Smith alleges that between February 1989 and February 1990 the defendants harassed him by searching him and his cell thirteen times, approximately four times more than other inmates under the same security status and residing in the same area as him. Smith also contends that most of these searches took place within a few days of his having filed an administrative grievance or lawsuit.[1]
 
 
 9
 Defendants respond by arguing that all the searches were conducted for security reasons. They submitted affidavits indicating that each prisoner's cell is routinely searched for contraband every sixty days and asserting that all searches of Smith's cell were undertaken for reasons of institutional security and safety. A death row inmate under maximum security conditions, defendants argue, should expect to be subjected to random searches. See Hudson v. Palmer, 468 U.S. 517, 529 (1984) ("Random searches of inmates, individually or collectively, and their cells are valid and necessary to insure the security of the institution and the safety of inmates and all others within its boundaries."). In sum, defendants deny that retaliation ever played a role in their decisions to engage in cell searches and maintain that the searches would have taken place whether or not Smith had ever filed grievances.
 
 
 10
 Smith, however, has presented "a chronology of events from which retaliation may plausibly be inferred." Cain v. Lane, 857 F.2d 1139, 1143 n. 6 (7th Cir.1988). Specifically, the frequent nature of the searches and their timing support an inference that defendants' conduct had a retaliatory motive. See Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1315-16 (9th Cir.1989) (inferring retaliatory motive from the "timing and nature" of suspensions); Smith v. Maschner, 899 F.2d 940, 949 (10th Cir.1990) (same). Moreover, he has provided affidavits which controvert the defendants' claim that their conduct was not a response to Smith's frequent filings. See, e.g., Affidavit of Lawrence K. Libberton (stating that he overheard CSO Dowling say, "This'll teach him to sue us," during a search of Smith's cell).
 
 
 11
 Nonetheless, the district court held that "[w]hile the plaintiff has submitted some circumstantial evidence which may be read as providing some support for an inference of retaliation, such as the timing of some of the cell searches, such a chronology is insufficient to get the plaintiff to the jury since the defendants have produced evidence of a legitimate reason for the cell searches." We disagree.
 
 
 12
 In rebutting a prima facie showing of retaliation, it is not enough that the defendants demonstrate that they could legitimately have engaged in such cell searches. Instead, the defendants must establish that they would have engaged in the same conduct even in the absence of Smith's protected activity. Soranno's, 874 F.2d at 1315. Viewing the evidence in the light most favorable to Smith, we are not satisfied that the defendants have met this burden. Whether the defendants would have engaged, as a matter of course, in such frequent cell searches raises a genuine issue of fact and involves a credibility determination that ought to be resolved by a jury. See Valandingham v. Bojorquez, 866 F.2d 1135, 1140 (9th Cir.1989) ("[W]hile [the prison official's] evidence ... appears to be more credible, that is not a proper ground for granting summary judgment."); Smith v. Maschner, 899 F.2d 940, 949 (10th Cir.1990) ("Where defendants' motives are seriously at issue, trial by affidavit is particularly inappropriate.").
 
 
 13
 It was inappropriate for the district court to decide a material question of fact. The cause must therefore be remanded on this point.
 
 B. Property Confiscation
 
 14
 Smith alleges that defendants have improperly confiscated several items of personal property including a Christmas food package, a cable adaptor, a pamphlet entitled "Correctional Officer Retirement Plan," a book entitled Investigative Reporting, fifty computer disks containing legal material, and other miscellaneous items. Defendants maintain in their affidavits that all property removed from Smith's cell was contraband. They also argue that summary judgment was proper because neither negligent nor intentional deprivations of property by a prison official constitutes a constitutional violation when there is a meaningful post-deprivation remedy available. See Hudson v. Palmer, 468 U.S. 517 (1982). Here, Smith has a remedy available in state court.
 
 
 15
 Although Smith does not have an independent due process claim for the deprivation of his property, Smith's allegations support his claim of retaliation. The property confiscations are intertwined with Smith's contentions of retaliatory searches discussed above. Defendants may have established that they could have removed Smith's property as being unauthorized, but whether they would have irrespective of Smith's exercise of protected conduct remains an issue of fact.[2] See Valandingham v. Bojorquez, 866 F.2d 1135, 1140 (9th Cir.1989).
 
 C. Denial of Visitation Rights
 
 16
 Smith contends that the pattern of retaliation also led to the removal of several people from his approved visitation list. This claim has no merit. Smith has failed to show any specific facts indicating that someone was improperly removed from his visitation list or that there was any retaliatory motive involved.
 
 D. Transfer to a Different Cell
 
 17
 Smith maintains that he was removed for retaliatory reasons from a place of confinement in which he was permitted greater privileges, such as contact visitation, to a more restricted environment. Here too, Smith has failed to present sufficient facts to defeat summary judgment.
 
 E. Due Process Disciplinary Violations
 
 18
 Smith argues that defendants have charged him with baseless disciplinary violations and that his appeals of these violations have been processed by biased and prejudiced hearing officers. There may be some merit to Smith's claim to the extent that the disciplinary violations for possession of contraband are related to his claim of retaliatory searches and property confiscation discussed above. But, the claim that the administrative appeals process was biased has no factual basis.
 
 F. Conspiracy
 
 19
 Finally, Smith argues that he has presented sufficient facts from which to infer the existence of a conspiracy between the defendants to deprive him of his constitutional rights. To prove the existence of a conspiracy, Smith must demonstrate that there was an agreement between defendants to violate his constitutional rights.[3] See Woodrum v. Woodward County, 866 F.2d 1121, 1126 (9th Cir.1989). It may be possible to infer an implied agreement between the officers conducting the improper searches, but beyond that, there is no evidence to support an extended conspiracy between all of the defendants.
 
 
 20
 Smith has raised other points in his brief but none merits discussion.
 
 
 21
 The judgment is affirmed in all respects except the summary disposition of his claim of retaliatory searches and seizures which is reversed and remanded for further proceedings.
 
 
 22
 Smith is to recover any actual costs not covered by his in forma pauperis filing.
 
 
 23
 REVERSED IN PART, AFFIRMED IN PART, AND REMANDED.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a); Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Smith also relies on Scher v. Engelke, 943 F.2d 921 (8th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1516 (1992), to suggest that a pattern of harassing searches may amount to an Eighth Amendment violation. In Scher, the court found that ten searches executed during a period of nineteen days and appearing to be motivated by a retaliatory purpose were sufficient to support a claim of cruel and unusual punishment. Id. at 924 (citing Hudson v. Palmer, 468 U.S. 517 (1982)). In this case, however, it is unlikely that the pattern of conduct alleged by Smith is egregious enough to rise to the level of an Eighth Amendment violation. See Vigliotti v. Terry, 873 F.2d 1201, 1203 (9th Cir.1989)
 
 
 [2]
 The Ninth Circuit recently reversed summary judgment on a related claim by Smith in an unpublished memorandum. Smith v. Sublett, et al., No. 91-16129 (October 19, 1992). Smith's claim was that prison officials were denying him access to three boxes of his legal materials as retaliation. The court found sufficient evidence of retaliatory motive to take the case before a jury
 
 
 [3]
 The defendants incorrectly argue that Smith must show he is a member of a protected class. Smith is not making a claim of discrimination under 42 U.S.C. § 1985 and therefore need not prove that he is a member of a protected class