**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 24 1997**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

FREDDY DEAN HARAGAN;
WILLARD L. HOUSTON,

        Plaintiffs-Appellants,

v.

CITY OF WAURIKA, a political
subdivision of the State of Oklahoma;
JERRY WALLACE, individually
and in his representative capacity;
NOLAND COMBS, individually
and in his representative capacity;
WINFORD R. BICKERSTAFF,
individually and in his representative
capacity,

        Defendants-Appellees.

No. 96-6237
(D.C. No. CIV-94-706-A)
(W.D. Okla.)

---

ORDER AND JUDGMENT[*]

---

Before BRORBY, LOGAN, and HENRY, Circuit Judges.

---

[*]    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

Plaintiffs-appellants Freddy Dean Haragan and Willard L. Houston appeal the district court's grant of summary judgment in favor of defendants on their claims that they were discharged for engaging in speech protected by the First Amendment, and their claims that the discharges violated public policy. On appeal, plaintiff Haragan argues that the district court erred in granting summary judgment on his claims because the evidence was sufficient to show that his speech to the news media involved a matter of public concern. Plaintiff Houston argues that the district court erred in granting summary judgment on his claims because the evidence was sufficient to show speech on a matter or public concern and a causal connection between the speech and his termination. Defendants have moved to dismiss plaintiffs' appeals as untimely. We conclude we have jurisdiction, and agree that the district court erred in granting summary judgment in favor of defendants. We therefore reverse and remand the case for further proceedings.

## I. Background

### A.    Plaintiff Freddy D. Haragan

Plaintiff Haragan was employed as Police Chief for the City of Waurika from June 1991 until his termination on August 30, 1993.  On June 17, 1993, Nolan Combs was appointed as the new City Manager.  During the following two months, he and Chief Haragan had several disputes in which Haragan refused to clean out his office, refused to take water samples without a license, and refused to fire the animal control officer for fear of a lawsuit.

When the animal control officer died in late July or early August 1993, Haragan accompanied the new officer to the city's dog pound to show him the facilities.  He discovered blood all over the pound, approximately eighteen to twenty dogs and newborn puppies that had been shot, and two men throwing the animals into a hole they had dug with a backhoe.  The two men did not work at the pound, but were the City Manager's son and a city employee.  Believing that a crime had been committed, Chief Haragan returned to his house and called the Humane Society in Lawton, Oklahoma to report what he had seen.  He next called Channel 7 and informed the news station what had occurred at the pound. Haragan then called Assistant District Attorney Karen Peck to inform her of the situation, and went to speak with Mayor Darvon Bates.  Thereafter, Chief

Haragan and a Humane Society representative were interviewed by several news stations about the incident.

Either that evening or the next day, Haragan went to City Manager Combs' office and asked him about the destruction of the dogs. Combs was "very angry" at Haragan for calling the news station and "flew off the handle." Appellant's App. at 162, 164-66. Within days, the city council held a meeting about the dogs which was covered by the news media. Several weeks after the incident, City Manager Combs terminated Chief Haragan. When Haragan asked why he was being terminated, Combs refused to reply, simply referring him to the letter of termination. Defendants maintain that Haragan was terminated for his poor performance and his failure to obey the City Manager's orders.

Plaintiff Haragan brought claims against the City of Waurika and City Manager Combs, alleging that he had been terminated in retaliation for his protected speech about the dogs, in violation of 42 U.S.C. § 1983 and Oklahoma public policy. The district court granted summary judgment in favor of defendants on the ground that Haragan failed to specify the content of his statements to the news media, holding the evidence insufficient to show the speech involved a matter of public concern. The court denied Haragan's motion to reconsider, and this appeal followed.

B.    Plaintiff Willard L. Houston

Plaintiff Houston was employed by the City of Waurika as supervisor of the Street Department from 1989 until his termination on June 1, 1993. At the beginning of May 1993, defendant Jerry Wallace was elected to the city council. Several days later, the City Manager was terminated, and council member Wallace took over as Acting City Manager for approximately five days. According to plaintiff Houston, on the day after council member Wallace took over as City Manager, he directed Houston and other city employees to begin hauling trash from the city transfer station, including batteries, roofing materials, tires, oil sweepings, and metal scraps, to a swamp by the side of a road, and to dispose of the trash in the swamp. Houston protested that the dumping was illegal, but did as he was told. Defendant Winford Bickerstaff was then appointed Acting City Manager, on or about May 10, 1993, and continued in that position until he was replaced by Nolan Combs on June 17, 1993. After Bickerstaff took over, he continued to require plaintiff Houston to move the trash from the transfer station to the swamp, and instructed Houston to dump the trash in a new place as well. Houston protested the dumping as illegal on several occasions, and warned Bickerstaff that the City would get in trouble. Houston testified that on each occasion Bickerstaff told him that it was none of his business, and that he should keep his mouth shut.

Approximately a week later, Civil Defense Director Harold Winton approached plaintiff Houston and asked him about the dumping. Houston told Winton what was being dumped and Winton contacted the State Health Department. Several days later, a representative of the Health Department, Jeff Lawler, arrived at the transfer station from which the trash was being hauled. When Lawler inquired about the destination of the trash, Houston told Lawler that he was placing Houston in a difficult position regarding his job, but that he couldn't stop Lawler from following him. See Appellant's App. at 218. Lawler followed Houston, watched him dump the trash in the swamp, and then contacted City Manager Bickerstaff. According to Houston, Bickerstaff then told Houston "to keep [his] mouth shut, not to be running [his] mouth if [he] wanted to keep [his] job." Id. at 225. The City was eventually required to remove all of the dumped trash from the swamp.

In mid-May, at approximately the same time these events were occurring, several city council members contacted City Manager Bickerstaff about payments plaintiff Houston received for parts used in repairing city vehicles. Houston occasionally repaired vehicles for the city at no charge, but submitted receipts for the parts, for which the city council approved payment. Houston had previously owned a starter and alternator repair business, and some of the parts for which he received reimbursement came from his leftover inventory. Believing these

payments violated the city charter, the council members told Bickerstaff that Houston should be terminated. The evidence is conflicting as to whether council member Wallace participated in this discussion. On May 26, 1993, the City Attorney confirmed that the payments may have violated the city charter, and on June 1, 1993, plaintiff Houston was terminated from his employment.

Plaintiff Houston brought claims against the City, former City Manager Bickerstaff, and council member Wallace, alleging that he was terminated because of his speech regarding the illegal dumping, in violation of 42 U.S.C. § 1983, several environmental regulatory statutes, and the public policy of Oklahoma. The district court granted summary judgment in favor of defendants, noting first its doubts whether Houston had engaged in protected speech, but concluding that even if he had, Houston failed to show a nexus between his speech and his termination. The district court denied Houston's motion to reconsider, and this appeal followed.

## II. Discussion

We begin by examining our jurisdiction over this appeal. Defendants argue that we lack jurisdiction because plaintiffs' appeal was not filed within thirty days after the summary judgments entered against them became final. In the district court, four different plaintiffs brought claims against defendants, arising out of

four separate employment terminations. On February 6, 1996, the district court entered summary judgment in favor of defendants on the claims brought by plaintiffs Haragan and Houston. On April 25, 1996, the district court entered an order denying Haragan's and Houston's motions to reconsider. The other two plaintiffs settled their claims, and on June 4, 1996, the district court entered an order dismissing the claims of the last remaining plaintiff. Plaintiffs Haragan and Houston filed their notice of appeal on July 5, 1996.

Our jurisdiction under 28 U.S.C. § 1291 is limited to reviewing final decisions of the district court, that is, decisions that fully resolve all claims for relief. See Harolds Stores, Inc. v. Dillard Dep't Stores, Inc., 82 F.3d 1533, 1541 (10th Cir.), cert. denied, 117 S. Ct. 297 (1996). When a lawsuit involves multiple claims or parties, "a judgment which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties," unless the district court expressly determines there is no just reason for delay and expressly directs entry of a final judgment. Fed. R. Civ. P. 54(b). Here, the district court made no such express determination, and did not expressly direct entry of final judgments on Haragan's and Houston's claims. The summary judgments did not become final, therefore, until the district court disposed of the last plaintiff's claims on June 4, 1996.

-8-

Because plaintiffs Haragan and Houston filed their notice of appeal within thirty days of that date, their appeal was timely, and we have jurisdiction.

We review the grant or denial of summary judgment de novo, applying the same standards as the district court under Fed. R. Civ. P. 56(c). See Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). When applying this standard, we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. See Kaul, 83 F.3d at 1212.

A public employee's claim that his or her termination violated protected speech rights requires a four-step analysis: (1) whether the employee engaged in speech involving a matter of public concern; (2) whether the employee's interest in such expression outweighed the government's interest in providing public services efficiently; (3) whether the employee has shown that the protected speech was a substantial or motivating factor in the challenged employment decision; and (4) whether the employer has shown that it would have reached the same decision in the absence of the protected speech. See Gardetto v. Mason, 100 F.3d 803, 811

(10th Cir. 1996); see also Connick v. Myers, 461 U.S. 138, 146-53 (1983); Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 284, 287 (1977).

We first address whether plaintiff Haragan presented sufficient evidence that his speech involved a matter of public concern. Speech involves a matter of public concern if it can "be fairly considered as relating to any matter of political, social, or other concern to the community." Connick, 461 U.S. at 146. The threshold inquiry is "whether the employee has spoken 'as a citizen upon matters of public concern,' or merely 'as an employee upon matters only of personal interest.'" Gardetto, 100 F.3d at 812 (quoting Connick, 461 U.S. at 147). This is determined by examining the speaker's motive to decide whether his speech was calculated to redress personal grievances or whether it had a broader public purpose. See Gardetto, 100 F.3d at 812. "Speech that pertains to a public agency's discharging its governmental responsibilities ordinarily will be regarded as speech on a matter of public concern," David v. City & County of Denver, 101 F.3d 1344, 1355 (10th Cir. 1996) (quotations omitted), cert. denied, 1997 WL 436767 (October 6, 1997), as will speech "which discloses any evidence of corruption, impropriety, or other malfeasance on the part of city officials," Conaway v. Smith, 853 F.2d 789, 796 (10th Cir. 1988).

Here, the district court concluded that without knowing the exact words spoken by Haragan, it was unable to determine whether his speech related to a

matter of public concern. We believe the record sufficiently discloses the content of plaintiff Haragan's comments to determine whether his speech related to a matter of public concern. See Patrick v. Miller, 953 F.2d 1240, 1247 (10th Cir. 1992) (noting that although the precise content of plaintiff's remarks was not disclosed by the record, the evidence was sufficient to determine whether his speech was on a matter of public concern); see also Jefferson v. Ambroz, 90 F.3d 1291, 1296-97 (7th Cir. 1996) (holding when examining "content" of employee's speech, "the court need only know the gist of what the employee said, not the precise words he used to express himself"). Haragan testified that he called Channel 7 and told them "about the dogs being shot at the dog pound," and that "approximately 19, 20 something dogs [had] been shot, [including] puppies." Appellant's App. at 157-58. He further testified to his motive for speaking out, stating that the disposal of the dogs was improper, and that he believed a crime had been committed. See id. at 152, 154-55. This public disclosure by the police chief of conduct by the City that he considered both illegal and unethical, see id. at 171, "sufficiently inform[ed] the issue as to be helpful to the public in evaluating the conduct of government," Witham v. Baptist Health Care of Oklahoma, Inc., 98 F.3d 581, 583 (10th Cir. 1996) (emphasis omitted), and therefore pertained to a matter of public concern. The summary judgment granted in favor of defendants on this issue was improper, and must be reversed.

-11-

Next, we examine whether plaintiff Houston engaged in speech on a matter of public concern, and if so, whether he presented sufficient evidence of a causal connection between such speech and his termination to raise a triable issue of fact. Applying the standards set out above, we conclude Houston's protestations to City Manager Bickerstaff and his disclosure of the illegal dumping to Civil Defense Director Winton and Health Department employee Lawler constituted speech on a matter of public concern.[1] Houston's statements to Bickerstaff and his answers to Winton's questions concerned potential wrongdoing by the City in which the public would definitely be interested. See Conaway, 853 F.2d at 796. There is no evidence that Houston's speech was motivated solely by personal interest or hostility; instead, there is evidence that he engaged in speech primarily for the purpose of informing his superior and an investigating authority of conduct he perceived to be improper and illegal. See id. Houston's response to Health Department employee Lawler's query constituted speech on the same matter. Although Houston did not expressly state to Lawler that the City was illegally dumping trash in the swamp, his response to Lawler's inquiry conveyed

---

[1] Plaintiff Houston also testified that he contacted another state official, Fred Biehler, about the dumping, but could not remember if this occurred before or after his termination. In addition, Houston testified that he spoke to two city council members, but does not indicate that his employer knew of these conversations, and thus presents no evidence that such speech entered into the decision to terminate him.

that very message.  See Spence v. Washington, 418 U.S. 405, 409-11 (1974)

(holding person's nonverbal activity sufficiently imbued with elements of

communication when "[a]n intent to convey a particular message was present, and

in the surrounding circumstances the likelihood was great that the message would

be understood by those who [received] it").

Further, the district court erred in finding Houston's evidence of a causal

connection insufficient.  With regard to the City and former City Manager

Bickerstaff, Houston presented undisputed evidence that after Bickerstaff's

conversation with Health Department employee Lawler, Bickerstaff threatened

Houston's termination if he continued "running [his] mouth," and that he should

"keep [his] mouth shut."  Appellant's App. at 225.  The record also contains

evidence that Houston's termination occurred within weeks of his conversations

with Bickerstaff, Winton, and Lawler.  We have recognized that a retaliatory

motive can be inferred when an adverse action closely follows the exercise of

protected activity.  See Ramirez v. Oklahoma Dep't of Mental Health, 41 F.3d

584, 596 (10th Cir. 1994) (holding evidence of adverse employment actions a

month and a half after engaging in protected activity was circumstantial evidence

of retaliation); Smith v. Maschner, 899 F.2d 940, 948-49 (10th Cir. 1990)

(holding evidence of close temporal proximity between engaging in protected

activity and subsequent discipline was evidence of retaliation).

Further, Houston presented evidence that defendants' proffered reason for his termination was pretextual, including testimony by city council members indicating that the city charter was enforced selectively, and that other times the charter would be purposely ignored, see Appellant's App. at 123-24, 141; evidence that the city council had knowingly approved payment to Houston for the parts on several occasions, id. at 140, 143, 144, 185; evidence that Houston was fired without a previous reprimand or other progressive discipline, id. at 86, 93, 95; and evidence that similar violations of the city charter were ignored, id. at 88, 92, 97. See, e.g., Wulf v. City of Wichita, 883 F.2d 842, 862 (10th Cir. 1989) (noting fact that no other officer had been fired for a first act of insubordination suggested pretext).

Summary judgment in favor of council member Wallace was also improper. Although it is not clear whether Wallace knew about Houston's speech to Winton or Lawler, Wallace undeniably knew that Houston had protested the dumping as illegal when he himself ordered Houston to begin hauling the trash to the swamp at the beginning of May. The private nature of this conversation does not remove the speech from constitutional protection. See Givhan v. Western Line Consol. Sch. Dist., 439 U.S. 410, 413-16 (1979). Wallace has been identified as one of the council members who, several weeks later, approached Bickerstaff and directed him to terminate Houston based on the city charter violation. Finally,

-14-

there is evidence that the charter was only enforced selectively, often when the city council sought to terminate an employee for another reason (as allegedly was done with Winton, based on his reporting of the illegal dumping, see Appellant's App. at 123). Taking all inferences in favor of Houston, as we must when reviewing a summary judgment, we conclude a factual issue exists whether council member Wallace's participation in the termination decision was motivated by Houston's speech concerning the illegal dumping.

The judgment of the United States District Court for the Western District of Oklahoma is REVERSED and the case is REMANDED for further proceedings.

Entered for the Court

Robert H. Henry
Circuit Judge