**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 19 1997**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

BRET S. KLEIN,

      Plaintiff-Appellant,

v.

KEN COBLENTZ, in his official and
individual capacity; ROBERT
FURLONG, in his official and
individual capacity; MIKE FERRIS, in
his official and individual capacity;
OFFICER BAUMEN, Correctional
Officer, in his individual capacity;
MARSHAL BLASINGAME, in his
official and individual capacity; TIM
SMELSER, in his official and
individual capacity; LOU NORDINE,
in his official and individual capacity;
ENDRE SAMU, Lt., in his official and
individual capacity; LINDA
TORNOWSKI, Lt., in her official and
individual capacity; L. VANGELDER,
Lt., in his official and individual
capacity; DICK MARR, in his official
and individual capacity,

      Defendants-Appellees.

No. 96-1289
(D.C. No. 95-K-304)
(D. Colo.)

ORDER AND JUDGMENT[*]

---

[*]    This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order

(continued...)

Before BALDOCK, EBEL, and LUCERO, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

Plaintiff-appellant Bret Klein, an inmate of the Colorado Department of Corrections, appeals from the district court's order granting summary judgment to defendants on his claims brought pursuant to 42 U.S.C. § 1983. We affirm in part and reverse and remand in part.

The facts as alleged in Klein's pro se complaint and as construed in his favor are that he and another inmate at the Limon Correctional Facility, Donald Andrews, began having problems with defendant Coblentz, a prison guard, when Coblentz instituted personnel changes in the prison hobby shop where both Klein and Andrews were employees. When the problems could not be resolved, Klein urged Andrews to speak to Coblentz' supervisor, who reversed Coblentz' personnel decision. Klein then had another disagreement with Coblentz which,

*(...continued)
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

according to Klein, resulted in his cell being "ransacked" by two other defendants, also guards at the prison. About the same time, Coblentz claimed that he had received information that Klein was going to assault him with a knife. This claim was investigated by one of Coblentz' superiors and found to be meritless.

Approximately two weeks after the first search of his cell, Klein's cell was again searched. During the second search, one of the defendants approached one of the guards performing the search and whispered something to him. Klein was then ordered to leave the area of his cell while the search was proceeding. Immediately after this search, Klein was arrested, and two days later he was informed that a knife had been found in his cell. Klein denied any knowledge of the knife and asked that it be fingerprinted. He also requested that he be given a polygraph. Neither of these two requests were granted. Klein's inmate representative was not allowed to inspect the cell or to examine prison records to establish that Klein had not been the only inmate to occupy the cell.

After his arrest, Klein was brought up on prison disciplinary charges, found guilty, and sentenced to thirty days' punitive segregation and to the loss of forty-five days of good time credit. Klein further charged that as a "collateral consequence" of this incident, he was regressively classified to maximum security administrative segregation where he was held for 584 days, suffering resultant

physical and mental distress. In a separate and later criminal action brought in Lincoln County District Court, Klein, represented by counsel and able to present evidence that other prisoners had occupied the cell and that the knife was never fingerprinted, was acquitted by a jury of possession of dangerous contraband.

Sometime after he had been punished by prison authorities for his alleged infraction, Klein learned that defendant Coblentz had been disciplined by the authorities at the Limon prison for planting a knife in the cell of another inmate. Coblentz was forced to resign and served ninety days in jail because of this infraction. As a result of this latter investigation, Klein was given a polygraph by an investigator from the Colorado Bureau of Investigation which, according to Klein, revealed that he had no prior knowledge of the knife found in the search of his cell.

Klein brought suit under 42 U.S.C. § 1983 alleging that his rights to due process and equal protection were violated when defendants planted a knife in his prison cell and then disciplined him for possessing dangerous contraband. He further alleged that defendants conspired to violate his rights and maliciously prosecuted him all in retaliation for the exercise of his rights under the First and Fourteenth Amendments. Specifically, Klein's pro se complaint stated that his "constitutional right to seek redress from a higher authority" had been infringed

by defendants.  R. Doc. C at 4.  Klein sought compensatory and punitive damages, and declaratory and injunctive relief.

The district court accepted the recommendation of the magistrate judge that summary judgment be entered for defendants.[1]  The magistrate judge had concluded that, assuming Klein had a protected liberty interest in remaining free from the punishment imposed, he received all the due process to which he was entitled.  Specifically, the magistrate judge concluded that the prison officials were within their discretion to deny his inmate representative permission to inspect Klein's cell and to examine records of its previous occupancy, as well as to deny Klein's request that the knife be fingerprinted and that he be administered a polygraph exam.  Applying the holding in Superintendent v. Hill, 472 U.S. 445, 455-56 (1985), the magistrate judge concluded that "some" evidence supported the disciplinary board's findings, thus insulating it from reversal.  Klein's retaliation claim was dismissed because the magistrate judge found it insufficiently specific to show retaliatory purpose.  The claim that Klein was denied equal protection of the law when the prison authorities refused to allow his inmate representative to examine his cell and to review prison records was held to be meritless.  Finally, the magistrate held that Klein's request for an injunction

---

[1]    Klein concedes that defendant Baumen was properly dismissed from this suit.

requiring the restoration of his good time credits was more properly pursued via a petition for writ of habeas corpus, and that there was no indication that Klein had exhausted his state court remedies. On appeal, Klein challenges these conclusions. He further argues that the filing fee obligations imposed on prisoners under 28 U.S.C. § 1915(b), as amended by the Prisoner Litigation Reform Act of 1995 ("PLRA" or "the Act"), Pub. L. No. 104-134, 110 Stat. 1321 (Apr. 26, 1996), under which Klein was required to pay this court's filing fee, is unconstitutional.

Because Klein is representing himself, his complaint will be liberally construed. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). In our de novo review of the district court's grant of summary judgment, we apply the same standard as that used by the district court and examine the record to determine whether there was any genuine dispute as to material facts and whether the prevailing party was entitled to the judgment as a matter of law. See Smith v. Maschner, 899 F.2d 940, 942-43 (10th Cir. 1990). Viewing the evidence in the light most favorable to Klein, we must determine whether reasonable jurors could find, by a preponderance of the evidence, that defendants were entitled to a verdict. See id. at 943.

<u>Claims based on imposition of disciplinary segregation</u>

Klein contends that he is entitled to damages for the imposition of disciplinary segregation and the resulting physical and mental anguish he suffered. We disagree. The Supreme Court has recently redefined the scope of prisoner due process claims and clarified the proper approach for their analysis. <u>See</u> <u>Sandin v. Conner</u>, 515 U.S. 472 (1995). The decision in <u>Sandin</u> applies retroactively. <u>See</u> <u>Talley v. Hesse</u>, 91 F.3d 1411, 1413 (10th Cir. 1996).

In <u>Sandin</u>, the prisoner alleged that he had been deprived of a state-created liberty interest protected by the due process clause when he was sentenced to thirty days disciplinary segregation for misconduct following a hearing at which he was not allowed to call witnesses. In rejecting the plaintiff's claim, the Court noted that, although "States may under certain circumstances create liberty interests which are protected by the Due Process Clause," those interests, however, "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Sandin</u>, 515 U.S. at 483-84 (citations omitted). The Court concluded that thirty days in disciplinary confinement did not "present the type of atypical, significant deprivation in which a State might conceivably create a liberty

interest." Id. at 486. Because Klein's sentence of thirty days in disciplinary segregation is the same as that of the plaintiff in Sandin, it is clear that Klein's disciplinary segregation similarly fails to encroach upon a due process liberty interest. Klein's subsequent placement in administrative segregation similarly fails to raise due process issues. See Talley, 91 F.3d at 1413 (rejecting procedural due process claim because, under Sandin, administrative detention is not the sort of "atypical, significant deprivation" that gives rise to a right to due process); see also Luken v. Scott, 71 F.3d 192, 193 (5th Cir. 1995), cert. denied, 116 S. Ct. 1690 (1996) (same).

In addition to analyzing the typicality of the punishment imposed, the Court in Sandin also considered whether the action of the prison authorities in disciplining the plaintiff would "inevitably affect the duration of [the plaintiff's] sentence." Id. at 487. Because "[t]he decision to release a prisoner rests on a myriad of considerations," the Court concluded that "[t]he chance that a finding of misconduct will alter the balance is simply too attenuated to invoke the procedural guarantees of the Due Process Clause." Id. Klein has similarly failed to show that his placement in either disciplinary or administrative segregation will inevitably affect the duration of his sentence and thus cannot invoke due process protections.

Accordingly, because Klein has not demonstrated that the punishment "impose[d] atypical and significant hardship on [him] in relation to the ordinary incidents of prison life," id. at 484, or that his sentence will be inevitably lengthened, see id. at 487, his punishment raises no procedural due process issues.

Loss of Good Time Credits

As discussed above, under Sandin Klein will be accorded relief for the deprivation of his good time credits only if he can demonstrate that "the State's action will inevitably affect the duration of his sentence." Sandin, 515 U.S. at 487. Generally, a loss of good time credits will not "inevitably affect the duration of [a prisoner's] sentence." Id.

Klein has no constitutional or inherent right to be released before his valid sentence expires. See Greenholz v. Inmates of Neb. Penal & Correctional Complex, 442 U.S. 1, 7 (1979). Nor does he dispute defendants' assertion that the grant of parole as to him is discretionary. Cf. Thiret v. Kautzky, 792 P.2d 801, 805 (Colo. 1990) (explaining Colorado parole scheme and observing that only those inmates serving sentences for crimes committed on or after July 1, 1979 but before July 1, 1985 are entitled to mandatory parole). Further, Klein does not allege that he fits under a sentence category whereby his good time

credits would qualify him for automatic parole eligibility under Colo. Rev. Stat. § 17-22.5-303(6).[2]

A Colorado inmate has no constitutional right to good time credit, see Kodama v. Johnson, 786 P.2d 417, 419 (Colo. 1990) (en banc), even though "the accumulation of good time credits serves . . . the purpose of determining an inmate's parole eligibility date," People v. Swepston, 822 P.2d 510, 512 (Colo. Ct. App. 1991). Good time credits do not count toward sentence reduction. See id. Thus, Klein's loss of good time credits has not "inevitably" increased the duration of his sentence, and accordingly does not give rise to a right to due process.

Claims Based on Procedures Employed in Prison Disciplinary Hearing

To the extent Klein asserts that his constitutional rights have been denied because the prison disciplinary procedures used in his case were defective, his claims are barred by the Supreme Court's recent decision in Edwards v. Balisok, 117 S. Ct. 1584 (1997). There, the Court determined that a claim for damages and declaratory relief brought by a state prisoner challenging the validity of the procedures used to deprive him of good-time credits is not cognizable under

_____

[2]    We are unable to determine from the record when Klein's offense(s) were committed or the nature or class of offense(s) involved. We are only told in his response brief to defendants' motion for summary judgment that Klein is serving a forty-year-to-life sentence.

§ 1983 unless the claimant can demonstrate that the underlying conviction or sentence has been invalidated. Id. at 1589.

Balisok, as does Klein, alleged that his prison disciplinary conviction was the result of a biased decision maker. Because Balisok's claim for declaratory relief and monetary damages, based as it was on the alleged bias of the decision maker, would have necessarily implied the invalidity of the punishment imposed, the claim could not be maintained under § 1983.

Klein is in the same position as Balisok. Klein's disciplinary determination has not been reversed, and he has apparently not pursued a state habeas action to obtain a judgment that the prison ruling was invalid. Klein's claim, therefore, is similarly noncognizable under § 1983. His claim that he was framed by prison authorities is indistinguishable from Balisok's and would necessarily imply the invalidity of the punishment imposed. We therefore affirm the district court's dismissal of Klein's due process and equal protection claims based on both the imposition of the particular punishment and any alleged defect in the prison disciplinary proceeding.[3]

---

[3]    As noted *supra*, in granting summary judgment to defendants on Klein's due process claim, the district court relied on Hill, 472 U.S. at 455-56, for the proposition that, because the findings of the prison disciplinary board were supported by "some evidence," those findings could be upheld. The "some evidence" relied on by defendants and the district court were the pictures of Klein's cell and of the knife, and the incident report submitted by Smelser.

(continued...)

-11-

Malicious Prosecution Claim

In addition to claims flowing from his prison disciplinary proceeding, Klein also asserts that he was the victim of malicious prosecution when he was made to stand trial in state court on the charge of possession of dangerous contraband, a class four felony. As mentioned above, Klein was acquitted by a jury of that charge. We do not read Balisok as erecting an impediment to this claim. Klein's success on a malicious prosecution claim based on the action in state court would not imply the invalidity of a conviction or sentence. There is no conviction and resulting sentence from the state court action to invalidate because Klein was acquitted. The state court action was separate from the prison disciplinary proceeding, carried on under different procedural rules and with different decision-makers. Balisok, therefore, does not apply to Klein's malicious prosecution claim.

_____

[3](...continued)
Because this was indeed "some evidence," the district court concluded that Klein's claim failed. The court's reasoning under the circumstances of this case is unpersuasive.

In cases involving evidence allegedly planted in order to facilitate a false disciplinary charge, the Hill standard has not been satisfied if the only evidence supporting the prison disciplinary board's decision is the planted evidence. Although the "some evidence" standard is meager, "it still must point to the accused's guilt." Lenea v. Lane, 882 F.2d 1171, 1175 (7th Cir. 1989).

In order to maintain this claim under § 1983, Klein must allege facts tending to prove the common law elements of malicious prosecution and that his Fourth Amendment right to be free from unreasonable seizure has been violated. See Taylor v. Meacham, 82 F.3d 1556, 1561 (10th Cir.), cert. denied, 117 S. Ct. 186 (1996). In Colorado

> a plaintiff must prove by a preponderance of the evidence that the defendant was a party to or assisted in a criminal or civil proceeding against the plaintiff, that the proceeding was resolved in favor of plaintiff, that there was no probable cause for the proceeding, that the defendant was actuated by malice in instituting the proceedings, and that the plaintiff was damaged thereby.

Walford v. Blinder, Robinson & Co., 793 P.2d 620, 623 (Colo. Ct. App. 1990).

We find the facts alleged by Klein sufficient to overcome defendants' motion for summary judgment on his claim of malicious prosecution. Defendants were parties to or assisted in the criminal proceedings against Klein which were resolved in his favor. Klein's allegation that the knife was planted in his cell in retaliation for his advocacy on behalf of another inmate sufficiently alleges the absence of probable cause for his prosecution.

In addition to the facts alleged in Klein's complaint and discussed above, the record contains affidavits from Klein's friend, Andrews, and from Gregory Wells, Klein's inmate representative. Both affidavits state that there had been no problems in the hobby shop until Coblentz took over. Andrews stated that Coblentz threatened "to get you and [to] get your buddy Klein too." R. Doc. 13,

-13-

Att. B.  Wells stated that the staff in Klein's particular cell block was ordered not to talk to him.  Id. at Att. C.  This evidence, when coupled with Klein's other allegations, is sufficient to raise a factual issue regarding defendants' malice and are similarly "sufficient to support an inference by a fair-minded jury that defendants took disciplinary action against him based at least in part on improper motives."  See Smith, 899 F.2d at 949.  Most importantly, on the record before us, defendants do not controvert Klein's allegation that the knife was planted in his cell, relying instead solely on the Sandin penalty-based analysis to sustain their case.  This approach ignores Klein's claim that he was maliciously prosecuted by defendants in retaliation for the exercise of his constitutional rights.  By itself, Klein's uncontroverted claim that defendants planted the knife in his cell and then used that as a basis for prosecuting him should have prevented the grant of summary judgment for defendants.  See Penrod v. Zavaras, 94 F.3d 1399, 1405 (10th Cir. 1996) (holding that uncontroverted allegations of retaliation were sufficient to raise a genuine issue of material fact).

Thus, with respect to Klein's claims based on a malicious prosecution theory arising from his criminal prosecution in state court, we find that Klein has raised genuine issues of material fact regarding that claim to survive defendants' motion for summary judgment.  The judgment of the district court on Klein's

malicious prosecution claim is reversed, and this claim is remanded for further proceedings.

In his complaint, Klein also requested an injunction ordering the authorities to restore his good time credits; the district court correctly held that this claim was more properly pursued via a petition for writ of habeas corpus. See Smith, 899 F.2d at 951. The claim for injunctive relief was thus dismissed under the authority of Rose v. Lundy, 455 U.S. 509, 522 (1982), because there was no indication in the record that state remedies had been exhausted. Upon remand, the district court, in its discretion, may wish to allow Klein to amend his complaint to allege exhaustion if possible. If Klein is able to demonstrate that he has exhausted his state court remedies, the case may proceed in the district court with this portion of it construed as a 28 U.S.C. § 2254 petition. If, however, Klein has not exhausted his state remedies, the district court should dismiss the habeas portion of Klein's complaint without prejudice. Because there is no exhaustion requirement under § 1983, see Balisok, 117 S. Ct. at 1589, Klein's malicious prosecution claim should go forward.[4]

---

[4]      Defendants argue in their brief that Klein has failed to allege the personal participation of defendants Furlong and Tornowski. We agree. The only involvement alleged against Furlong and Tornowski pertains to the prison disciplinary proceedings which we have already held were properly dismissed. There is no allegation adequately tying Furlong and Tornowski to the malicious prosecution. Thus, we affirm the dismissal of Klein's claims against defendants

(continued...)

In their brief, defendants argue that they should be accorded Eleventh Amendment immunity from suit. This is incorrect because Klein sued defendants in their individual as well as their official capacities, thus avoiding an Eleventh Amendment problem. See Pride v. Does, 997 F.2d 712, 715 (10th Cir. 1993).

Although the district court did not rule on defendants' qualified immunity defense, no such immunity would be appropriate because the law was clearly established that defendants could not interfere with Klein's right to free speech or retaliate against him for exercising it by subjecting him to a malicious prosecution. See Penrod, 94 F.3d at 1405.

Finally, Klein argues that the Prison Litigation Reform Act (PLRA) is unconstitutional. This court has recently considered a similar challenge to PLRA and has agreed with the uniform conclusion of other courts that, even under a variety of theories, the Act passes constitutional muster. See Shabazz v. Parsons, No. 97-6025, 1997 WL 650958, at *2 (10th Cir. Oct. 21, 1997) (citing Mitchell v. Farcass, 112 F.3d 1483, 1487-89 (11th Cir. 1997); Roller v. Gunn, 107 F.3d 227, 231-34 (4th Cir.), cert. denied, 118 S. Ct. 192 (1997); Hampton v. Hobbs, 106 F.3d 1281, 1283-88 (6th Cir. 1997)). Klein first contends that the Act denies prisoners equal protection because it impermissibly distinguishes between

---

[4](...continued)
Furlong and Tornowski.

-16-

indigent inmates and indigent people in general. The Eleventh Circuit has recently rejected such an argument, concluding that in enacting PLRA "Congress had ample justification (e.g., prisoners often have an abundance of free time, live in a nearly cost-free environment, and have unique incentives to file meritless or frivolous lawsuits) in differentiating between indigent prisoners and other litigants." Mitchell, 112 F.3d at 1489; see also Hampton, 106 F.3d at 1286 (rejecting an equal protection challenge because "neither prisoners nor indigents are a suspect class and . . . the classification does not implicate a fundamental right"). The Act does not intrude on the constitutional separation of powers. See Plyler v. Moore, 100 F.3d 365, 372 (4th Cir. 1996), cert. denied, 117 S. Ct. 2460 (1997). Nor does it impair due process rights. See Hampton, 106 F.3d at 1287-88. Finally, because nothing in PLRA punishes inmates for past activity, the Act does not trespass on citizens' right to be free from bills of attainder, under which specifically designated persons or groups are singled out for punishment without trial. See Selective Serv. Sys. v. Minnesota Pub. Interest Research Group, 468 U.S. 841, 847 (1984). Klein's contention that it is inconsistent to require an indigent litigant to pay a filing fee and then to dismiss the complaint as frivolous is without merit because the Act amends § 1915 and now explicitly authorizes such procedure. See 28 U.S.C. § 1915(e)(2).

The judgment of the United States District Court for the District of

Colorado is AFFIRMED in part and REVERSED in part, and this case is

REMANDED for further proceedings in accordance with this order and judgment.


Entered for the Court

David M. Ebel
Circuit Judge