**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 22, 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

VALLEE KENT FLEMMING,

      Plaintiff-Appellant,

  v.

CORRECTIONS CORPORATION OF
AMERICA; RENE WATKINS, Deputy
Warden for CCA; DR. STORY,

      Defendants,

  and

CURTIS BAKER, Medical
Administrator for CCA; HUSSEIN
TORBATI, Physician's Assistant for
CCA,

      Defendants-Appellees.

No. 04-6312
(D.C. No. 01-CV-1615-L)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**  *

---

Before **HARTZ** , **McKAY** , and **PORFILIO** , Circuit Judges.

---

   *     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Vallee Kent Flemming, proceeding pro se, appeals the district court's grant of summary judgment to defendants Curtis Baker and Hussein Torbati on two claims in this 42 U.S.C. § 1983 action. We take jurisdiction under 28 U.S.C. § 1291, and we affirm.

## *Background*

At the times relevant to this action, Mr. Flemming was imprisoned at the Cimarron Correctional Facility in Cushing, Oklahoma. Both defendants-appellees were employed at the Cimarron infirmary, Hussein Torbati as a physician's assistant and Curtis Baker as a registered nurse.

In June 2000, a urologist opined that Mr. Flemming had a kidney stone. In the summer and fall of 2000, Mr. Flemming was tested and provided medication for the kidney stone, and he was scheduled for a follow-up visit with the urologist on February 28, 2001. During the fall and winter, however, Mr. Flemming repeatedly complained of blood in his urine, and tests confirmed the presence of blood. On February 17, 2001, Cimarron physician Dr. Storey directed that an unannounced urine sample be obtained only by catheterization "in an attempt to

-2-

rule out any possible urethral trauma (possibly self-inflicted) causing this gross hermaturia." R. Doc. 26, Ex. A, progress note dated 2/17/01.

On February 26, 2001, Mr. Flemming visited the prison infirmary, complaining of pain in the right side of his lower back and abdomen and stating that he was passing a kidney stone. According to Mr. Flemming, Mr. Torbati and Mr. Baker refused to see him or treat him. Mr. Flemming had to seek assistance from a prison chaplain and the assistant warden, who required that Mr. Flemming be seen. When Mr. Torbati did examine Mr. Flemming, he opined that Mr. Flemming did not show the symptoms of a person passing a kidney stone. Mr. Torbati told Mr. Flemming that he would have to be catheterized for a urine sample, but Mr. Flemming refused. Mr. Torbati then placed Mr. Flemming in a medical observation cell, against Mr. Flemming's will.

Approximately a half-hour later, Mr. Baker and a prison nurse visited Mr. Flemming in the observation cell. According to Mr. Flemming, Mr. Baker told him that, despite his overwhelming pain, he would not be treated or given pain medication until he submitted to the catheterization. Mr. Baker promised him that pain medication would be used for the catheterization and would be provided after the procedure. Mr. Torbati, however, stopped the nurse from injecting numbing medication and instructed him instead to place the numbing medication on the catheter as a lubricant. When Mr. Flemming objected,

Mr. Torbati told him that the medication would not be injected, and if that were not acceptable, Mr. Flemming could return to the medical observation cell. Because he did not want to remain in the observation cell without treatment, Mr. Flemming allowed the catheterization to proceed. After the catheterization, Mr. Flemming was allowed to leave, but he was not provided any pain medication.

Mr. Flemming brought a § 1983 suit alleging Eighth and Fourteenth Amendment violations arising from his medical treatment and events on and after February 26, 2001. The district court granted summary judgment in favor of the defendants in that suit, and Mr. Flemming appealed. This court affirmed in part and reversed in part, holding that the district court appropriately granted judgment to defendants on Mr. Flemming's Eighth Amendment claims, but had neglected to address two Fourteenth Amendment claims related to the events of February 26, 2001. *Flemming v. Corrs. Corp. of Am.*, 72 Fed. Appx. 776, 778 (10th Cir. July 24, 2003). The court remanded for consideration of Mr. Flemming's claims of retaliation and deprivation of his right to consent to medical treatment. *Id.* On remand, the district court denied Mr. Flemming's motion for summary judgment on the two claims, then granted defendants' motion for summary judgment. Mr. Flemming appeals.

## *Analysis*

"We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court." *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). "When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Id.* Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise. *See Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir. 1999). "Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *Phillips v. Calhoun*, 956 F.2d 949, 951 n.3 (10th Cir. 1992). Because Mr. Flemming appears pro se, we construe his pleadings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam).

### I

Mr. Flemming first claims that the district court violated W.D. Okla. LCvR 56.1(A) by allowing the defendants to file a second summary judgment motion

-5-

without leave of court. We review a district court's application of its local rules for abuse of discretion. *See Hernandez v. George*, 793 F.2d 264, 268 (10th Cir. 1986).

This court remanded Mr. Flemming's claims for further proceedings because the two remaining claims were not addressed by the district court in granting judgment in favor of the defendants, and thus they had been left completely unresolved. *See Flemming*, 72 Fed. Appx. at 778. Under these circumstances, it was not an abuse of discretion for the district court to entertain the parties' motions for summary judgment on the two remaining claims, even though the defendants had previously filed a dispositive motion.

II

Mr. Flemming raises several challenges to the district court's decision to grant summary judgment to defendants. He contends that the district court either ignored his evidence controverting defendants' factual statements or impermissibly resolved genuine issues of fact. He also argues that it was incompatible for the district court to hold that he was not entitled to summary judgment because defendants showed that there were disputed facts, but then grant summary judgment to defendants rather than scheduling a trial.

## A

With regard to Mr. Flemming's argument that the magistrate judge adopted the defendants' version of the facts and ignored his materials controverting defendants' allegations, we have reviewed the materials that Mr. Flemming cites. The controverted issues do not persuade us that the district court erred, however, because they are not outcome-determinative, and thus are not genuine issues of material fact as required by Fed. R. Civ. P. 56(c). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248; *see also Chasteen v. UNISIA JECS Corp.*, 216 F.3d 1212, 1216 (10th Cir. 2000) ("A 'material fact' is one which could have an impact on the outcome of the lawsuit, while a 'genuine issue' of such a material fact exists if a rational jury could find in favor of the non-moving party based on the evidence presented.").

B

The district court did not err in granting summary judgment on Mr. Flemming's retaliation claim. This claim had two components. First, Mr. Flemming alleged that Mr. Torbati, angry at Mr. Flemming for having the chaplain and assistant warden intercede for him, required Mr. Flemming to undergo catheterization, when Mr. Flemming was ready and willing to provide a urine sample naturally. Second, Mr. Flemming alleged that Mr. Torbati placed him in a medical holding cell in retaliation for Mr. Flemming's exercise of his right to refuse catheterization. To survive a motion for summary judgment on this claim, Mr. Flemming must present evidence that would permit a reasonable jury to find that Mr. Torbati retaliated against Mr. Flemming for his exercise of his right to medical treatment and his right to refuse medical treatment. *See Smith v. Maschner*, 899 F.2d 940, 949 (10th Cir. 1990) (establishing elements of retaliation claim in case involving constitutional right of access to the courts).

Having reviewed the record, we do not believe that a reasonable jury could find for Mr. Flemming on the evidence presented with regard to this claim. We acknowledge, as urged by Mr. Flemming, that the actions were in close temporal proximity to the assertion of Mr. Flemming's rights. But even considering the temporal proximity, as the district court concluded, no reasonable jury would find that Mr. Torbati would not have taken either of the complained-of actions "but

-8-

for" Mr. Flemming's invocation of his rights. *See Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998); *Smith*, 899 F.2d at 949-50. The order for catheterization, for example, was a directive from Dr. Storey that pre-dated Mr. Flemming's February 26, 2001, visit to the infirmary. Further, in light of Mr. Flemming's complaints about the pain he was suffering, there is insufficient evidence that a retaliatory motive prompted Mr. Torbati's decision to place Mr. Flemming in the medical observation cell. We affirm the district court's decision to grant summary judgment to defendants on this claim.

C

The district court also did not err in granting summary judgment to defendants on Mr. Flemming's claim that his right to refuse medical treatment was violated because he was coerced into consenting to the catheterization.

It is undisputed that Mr. Flemming actually consented to the procedure. Further, he did so even after Mr. Torbati informed him that numbing medication would not be injected prior to the catheterization. Unfortunately, Mr. Flemming was faced with unattractive choices. We do not believe, however, that a rational factfinder could conclude that Mr. Flemming's right to refuse treatment was violated. [1]

---

[1] Mr. Flemming complains that the district court did not consider the fact that he named several witnesses, including the nurse who allegedly was present

Further, to the extent that Mr. Flemming's claim is based on the manner in which the catheterization was performed or the results of the procedure (i.e., his objection to Mr. Torbati's decision not to inject numbing medication, his contention that the procedure was more painful than it needed to be, and that he suffered physical and psychological damages from the procedure), it crosses from the realm of the Fourteenth Amendment into the realm of the Eighth Amendment or medical malpractice. But his Eighth Amendment claims have already been decided against him and will not be relitigated in this proceeding, and absent deliberate indifference to a prisoner's medical needs, medical malpractice generally does not constitute a constitutional violation. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). The district court dismissed Mr. Flemming's state law claims without prejudice, leaving him free to pursue them in state court.

---

[1](...continued)
during the conversation with Mr. Baker in the medical observation cell. In the district court, Mr. Baker submitted an unsigned affidavit that purported to reflect the nurse's testimony. (On appeal, he explains that the nurse refused to sign the affidavit for fear of retaliation from his employer.) An unsigned affidavit, however, does not constitute evidence under Fed. R. Civ. P. 56(e). *See Mason v. Clark*, 920 F.2d 493, 495 (8th Cir. 1990). Moreover, the submitted affidavit does not discuss the events that occurred after Mr. Flemming was placed in the medical observation cell, and thus the affidavit would not assist Mr. Flemming with his involuntary consent claim even if it were considered evidence.

***Conclusion***

The judgment of the district court is AFFIRMED.  The mandate shall issue forthwith.

Entered for the Court


Monroe G. McKay
Circuit Judge